HENDERSON TAYLOR, plaintiff in error, *vs.* JAMES R. MARTIN, defendant in error.

There was no abuse of the discretion of the Court in refusing to grant a new trial in this case.

New trial. Evidence. Before Judge ROBINSON. Morgan Superior Court. November Term, 1872.

Martin brought case against Taylor for malicious prosecution, claiming $2,000 00 damages. The defendant pleaded not guilty. Plaintiff introduced an indictment charging him with having enticed away laborers in the employment of defendant, upon which appeared his name as prosecutor. J. T. Patterson, one of the grand jury who found the true bill, testified that the defendant was examined before said jury as the prosecutor. It was shown by the subpœna docket that the defendant had caused subpœnas to be issued for the prosecution. It was admitted that he employed counsel to represent the State, and that the plaintiff was tried on said indictment and acquitted. The Solicitor General, Mr. Jordan, testified that the defendant was present, counseling and advising at the trial. The plaintiff testified that he did not entice away the servants named in the indictment (Jerry Allen and Nat Allen) from the employment of the defendant. That defendant told him, in the latter part of December, 1870, after inquiring what rates Poulaine was paying for hands, that he would pay no such rates; that he would suffer his land to grow up in briars first. That plaintiff was employed as agent by Poulaine for 1871, to attend to his plantation, and was not employing hands for his own use. That

he was authorized to and did look up hands for his employer. That he did not tell James Almond, in January or February, 1871, at plaintiff's house, on Poulaine's plantation, that the negroes named in the indictment had told him before he employed them that they were under a verbal contract to live with the defendant for the year 1871, and that they did not wish defendant to know that they were going to leave, for if he did he would not settle with them. Did not tell Almond that he, plaintiff, had hired or contracted with the negro hands; but did tell him, in May, 1871, that said negroes told him that they had had a contract with the defendant, and that he would not settle if he knew they were going to leave. Plaintiff and his family are dependent upon his labor for a support; he has not been discharged by Poulaine, but is still living with him in same capacity as in 1871. His counsel charged him $25 00 for defending him upon the criminal trial.

Antoine Poulaine testified, that he hired the negroes named in the indictment about Christmas, 1870, or early in January, 1871. That plaintiff, as his agent, was looking up hands for him before and about that time. That he told the defendant, who came to his house in February, about the negroes, that he had hired them by written contract, and did not want him to come there bothering about his hands; but that if he, defendant, would satisfy him, witness, that he had a contract with the negroes before his, witness', was made, he would discharge them. That he told Peterson Taylor, in February, 1871, before the indictment was found, that he had the negroes, and thinks he so testified on the trial upon the indictment.

G. Almond testified, that the defendant told him in July, 1871, that the prosecution against plaintiff grew out of bad feeling between his son P. Taylor and the plaintiff; that it ought not to be in Court; that P. Taylor, agent for the defendant, told him that he had made no contract with the negroes named in the indictment, and did not want any as he had them where he wanted them.

James Brack testified, that he was present when the plaintiff was tried on the indictment; that on said trial Reuben Almond, since deceased, testified that P. Taylor told him that he did not have, and did not want any contract with the negroes named; that he had them where he wanted them.

Henderson Taylor, the defendant, testified that the negroes named in the indictment, had lived on his place in Morgan county, which his son Peterson Taylor managed as his agent, in 1870; that his son had informed him that he had contracted with said negroes to work on the same place for the year 1871; that some time in January, 1871, the negroes left his place and went to Mr. Poulaine's, on which the plaintiff lived as agent; that not long after they left, James Almond told defendant that the plaintiff had told him that he had hired said negroes when he knew they were under a verbal contract to work for the defendant for the year 1871, but not being in writing it was worthless; that said negroes had told him these things, and also, that they did not wish the defendant to know that they were about to leave, for if he did he would not settle with them; that he knew the negroes were working on Poulaine's place; that he never spoke to the plaintiff about hiring them; that he had never told plaintiff that he had hired no hands for the year 1871.

Peterson Taylor testified that as agent for his father, the defendant, he did make a verbal contract with the negroes named in the indictment, for the year 1871, and that he so told the defendant before said negroes left the place, and before the indictment was found; that he may have had a conversation with Mr. Poulaine as testified to by him, but is positive that he never reported that conversation to his father; that he did not say to George Almond, Reuben E. Almond, deceased, or to any one else, that he had not made a contract with the negroes mentioned, for the year 1871.

James Almond testified, that in the latter part of January or first of February, 1871, the plaintiff told him, at his house on Poulaine's plantation, that he hired the negroes named for Poulaine; that they told him before he hired them that they

Taylor *vs.* Martin.

were under a verbal contract to live with the defendant for the year 1871, and that they did not want the defendant to know that they were going to leave, for if he did, he would not settle with them; that the plaintiff also said that the contract was of no account, as it was not in writing; that witness told the defendant of this conversation before the prosecution was commenced; that the conversation took place in the presence of the plaintiff's wife.

Louis Stepney, colored, testified, that he lived on Mr. Poulaine's land when the plaintiff was agent or overseer on the place; that some time in January, 1871, the plaintiff said to witness that he had some hands, naming those mentioned in the indictment, whom he wished to put in his (witness') squad; that he stated, at the same time, that the hands were under verbal contract for the year 1871, but as it was not in writing, it was no account; that he heard of the negroes coming to live with and work for Mr. Poulaine long before he ever saw the plaintiff.

The jury found $100 00 for the plaintiff.   The defendant moved for a new trial, upon the following grounds, to-wit:

1st. Because the verdict was contrary to law, equity and evidence.

2d. Because the Court erred in admitting, over the objection of defendant's counsel, evidence of a conversation between Peterson Taylor and Antoine Poulaine, both of them being witnesses, in the absence of the defendant.

The motion was overruled, and the defendant excepted.

BILLUPS & BROBSTON, by W. A. LOFTON, for plaintiff in error.

McHENRY & McHENRY, by brief, for defendant.

TRIPPE, Judge.

This was a case which, under the evidence, was one exclusively for the jury.   No exception was taken to the action of the Judge, the one alleged in the bill of exceptions being

withdrawn. Whether the statement of the witness, Poulaine, that "he told Peterson Taylor, in February, 1871, before the indictment, that he (witness) hired the negroes," was or was not admissible, its admission could not have damaged the defendant below. The witness had already testified that he told the same thing to the defendant in the same month. Whatever force was in the fact that Mr. Poulaine had hired the negroes, and that defendant was informed of it in February, it was distinctly stated by him, as a fact, that he had hired them, and had so notified the defendant. That he also so told the son of defendant, was an immaterial question as to the issue upon trial.

The Court did not abuse its discretion in refusing to grant the new trial.

Judgment affirmed.